UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AB DATA LTD,

        Plaintiff,

v.

        Case No. 23-cv-0978-bhl

RICOH USA INC,

        Defendant.

## ORDER GRANTING MOTION TO DISMISS

In 2019, Plaintiff A.B. Data, Ltd. (AB Data) contracted with Avanti Computer Systems Limited (Avanti), a Canadian corporation, to license Avanti's proprietary "Slingshot" data management software. The license agreement between AB Data and Avanti contained a forum-selection clause requiring AB Data to bring any suit relating to the agreement in the Province of Ontario, Canada. Nevertheless, when Avanti's software failed to perform as promised, AB Data filed suit in Milwaukee County Circuit Court. And it did so against Ricoh USA, Inc. (Ricoh), not Avanti. Ricoh responded by first removing the case to federal court and then filing a motion to dismiss under the doctrine of *forum non conveniens*, asking the Court to hold AB Data to the forum-selection clause it agreed to in its contract with Avanti. Ricoh also contends that AB Data has sued the wrong party. AB Data opposes Ricoh's motion and has also filed a motion to amend its complaint to add Avanti as a party. Because the Court finds that the forum-selection clause is valid and applies to each of AB Data's claims, whether against Ricoh or Avanti, the Court will grant Ricoh's motion to dismiss and deny AB Data's motion to amend as futile.

### FACTUAL BACKGROUND[1]

AB Data is a Wisconsin corporation that "provides targeted fundraising and business critical communications, class action administration, direct marketing, and list services to its

---

[1] These facts are derived from AB Data's complaint, ECF No. 1-2, the allegations in which are presumed true when considering a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

clients." (ECF No. 1-2 ¶¶1, 3.) Ricoh is a Pennsylvania corporation that, through Avanti,[2] marketed its Slingshot data management software to AB Data. (*See id.* ¶¶2, 5.)

In 2017, AB Data was seeking a data management solution that would "more efficiently streamline data and workflows." (*Id.* ¶¶5–6.) In response to AB Data's inquiries, Ricoh offered its Slingshot software as a solution, promising that Slingshot "would be a great fit for AB Data's multiple divisions and integrate with AB Data's key existing systems and software." (*Id.* ¶¶6, 8.) After considering multiple workflow software solutions and participating in "detailed discussions" with Ricoh, AB Data chose Slingshot for its data management needs. (*Id.* ¶9.)

In June 2019, AB Data signed a License Agreement with Avanti for implementation of Slingshot. (*Id.* ¶10; ECF No. 5-1.)[3] The License Agreement provides that it is governed by the laws of the Province of Ontario and federal Canadian law. (ECF No. 5-1 at 6–7.) It also contains a forum-selection clause specifying that "[AB Data] agrees that any claim or action . . . shall be commenced in the court of the Province of Ontario." (*Id.* at 7.)

In the months and years that followed, AB Data claims to have experienced numerous issues with the Slingshot software and complains that Ricoh was unable to provide satisfactory solutions. (ECF No. 1-2 ¶¶15–54.) In March 2022, after nearly three years of training, design, and implementation, AB Data made the decision to cancel its implementation of Slingshot. (*Id.* ¶¶55, 57.) Around this time, Ricoh admitted for the first time that Slingshot was not designed for a company with multiple divisions like AB Data. (*Id.* ¶96.) AB Data was forced to contract with a different data management software vendor, despite having paid Ricoh over $180,000 to license, customize, and implement Slingshot and having invested thousands of employee hours in trying to make the software work. (*Id.* ¶¶57–59.)

---

[2] The relationship between Ricoh and Avanti is disputed. AB Data treats Ricoh and Avanti as the same party throughout its complaint, but also asks to amend its complaint to add Avanti as a party. According to Ricoh, Avanti is a separate company with different ownership ("Ricoh is owned by Ricoh Americas Holdings, Inc." and "Avanti is owned directly by Ricoh Company Limited") and a different principal place of business (Ricoh in Pennsylvania, Avanti in Canada). (ECF No. 10 at 2.) At the same time, Ricoh has largely defended this lawsuit as if it is a proper party for AB Data's claims. Because AB Data's allegations are taken as true at the motion to dismiss stage, and because, as detailed below, any distinction between Ricoh and Avanti does not alter the Court's analysis, the Court will treat Ricoh and Avanti interchangeably for the purpose of this motion.

[3] AB Data did not attach the License Agreement to its complaint, but Ricoh attached the agreement to its motion to dismiss. "It is 'well-settled in [the Seventh Circuit] that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'" *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)). The License Agreement forms the basis of AB Data's contract with Ricoh/Avanti and AB Data does not dispute its authenticity. It is both referenced in the complaint and central to each of AB Data's claims. Accordingly, the Court will consider the License Agreement as part of the pleadings.

## LEGAL STANDARD

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). A valid forum-selection clause is "given controlling weight in all but the most exceptional cases." *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). "[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.*

## ANALYSIS

AB Data asserts claims against Ricoh for (1) breach of contract; (2) fraudulent inducement; (3) misrepresentation; (4) theft by false representation, pursuant to Wis. Stat. §§ 895.446, 943.20; (5) unjust enrichment; and (6) breach of the duty of good faith and fair dealing. (ECF No. 1-2 ¶¶60–118.) Ricoh asserts that AB Data's claims are each subject to a mandatory forum-selection clause requiring they be litigated in Ontario, Canada, and, accordingly, seeks dismissal under the doctrine of *forum non conveniens*. (ECF No. 4 at 1, 3–8.) Alternatively, Ricoh seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) on various grounds, including that Ricoh is not the proper defendant for this lawsuit. (*Id.* at 8–14.) AB Data opposes Ricoh's motion to dismiss and asks the Court for leave to file an amended complaint joining Avanti as a defendant, alleging additional facts concerning Avanti's and Ricoh's relationship, and otherwise clarifying its allegations. (ECF Nos. 8, 14.) Because the forum-selection clause bars AB Data from litigating its claims in this Court (whether against Ricoh, Avanti, or both), Ricoh's motion to dismiss for *forum non conveniens* will be granted. AB Data's motion to amend will be dismissed as futile. The Court need not and therefore will not reach Ricoh's alternate arguments for dismissal.

**I. The Court Will Dismiss the Complaint Under the Doctrine of *Forum Non Conveniens*.**

In support of dismissal, Ricoh points to a forum-selection clause contained in the License Agreement. Ricoh argues that the forum selection clause bars AB Data from litigating its claims in this Court and therefore asks the Court to dismiss the complaint under the doctrine of *forum non conveniens*. AB Data offers two response arguments. First, it asserts that the forum-selection clause was procured by fraud and, therefore, is void. Second, and alternatively, it contends that public policy considerations militate against the Court applying the forum-selection clause to bar its statutory fraud claim. Because the record confirms that the forum-selection clause is

mandatory, valid, and applies to each of AB Data's claims, and because AB Data has not shown its enforcement is unwarranted, the complaint will be dismissed on *forum non conveniens* grounds.

Section 13 of the License Agreement reads, in relevant part:

> Governing Law.  This Agreement is governed by the laws of the Province of Ontario and the federal laws of Canada applicable therein . . . .  If the Licensed Programs were acquired outside Canada, each of the parties hereto irrevocably attorns to the non-exclusive jurisdiction of the courts of the Province of Ontario. The Licensee agrees that any claim or action brought by the Licensee shall be commenced in the courts of the Province of Ontario.

(ECF No. 5-1 at 6–7.)

### A. The Forum-Selection Clause is Valid, Mandatory, and Applies to Each of AB Data's Claims.

As a threshold matter, the Court must determine whether the forum-selection clause applies to the claims in AB Data's complaint and whether the clause is mandatory or permissive. *Nulogy Corp. v. Menasha Packaging Co.*, 76 F.4th 675, 679–80 (7th Cir. 2023).  Ricoh contends that the clause is mandatory and applies to each of AB Data's claims.  (ECF No. 4 at 3–5, 7–9.)  AB Data has not disputed either contention.[4]  Indeed, both points are confirmed by the language used.  The License Agreement uses mandatory language encompassing any legal disputes brought by AB Data, requiring that "any claim or action" brought by AB Data "shall" be commenced in Ontario. (ECF No. 5-1 at 7.)  Thus, Ricoh has established that the forum-selection clause is mandatory and that it covers each of AB Data's claims.

AB Data challenges enforcement of the clause on grounds that it is void because it was procured by fraud.  Under both Canadian and United States law, a forum-selection clause is unenforceable if it was procured by fraud.  *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) ("[A] a forum selection clause can be found invalid because the clause itself was procured by fraud."); *Douez v. Facebook, Inc.*, [2017] 1 S.C.R 751, para. 28 (Can.) ("As with any contract claim, the plaintiff may resist the enforceability of the contract by raising defences such as . . . fraud.").  In pursuit of this defense, AB Data spends a considerable portion of its briefing trying to show that its contract with Ricoh was procured by fraud.  (ECF No. 8 at 4–

---

[4] In a footnote, AB Data argues that it entered into two agreements with Ricoh, a licensing agreement and a services agreement, the latter of which "did not contain a forum selection clause."  (ECF No. 8 at 12.)  But AB Data declines to develop this argument and the Court will not do so on its behalf.  *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

6, 9–12.) But its efforts are misplaced. The Seventh Circuit has confirmed that a forum-selection clause is invalid only if "the clause itself was procured by fraud." *Muzumdar* 438 F.3d at 762. Canadian law is the same. *See Expedition Helicopters Inc. v. Honeywell Inc. (2010)*, 100 O.R. 3d 241, para. 24 (Can. Ont. C.A.) ("The few factors that might be considered [in determining the validity of a forum-selection clause] include the plaintiff was induced to agree *to the clause* by fraud . . . .") (emphasis added). The Ontario Superior Court of Justice explained the necessity of this distinction:

> If the plaintiffs can commence an action with an allegation of fraud which would void the contract and thus vitiate a choice of jurisdiction clause from the outset, then they may succeed on the merits while enjoying their own choice of jurisdiction or fail on the merits while depriving the defendant of the contracted choice. These clauses are too important in international commerce to permit that anomalous result to flow.

*Straus v. Decaire*, 2007 CarswellOnt 7972, para. 32 (Can. Ont. S.J.C.) (WL).

AB Data attempts to escape this distinction by pointing to the U.S. Supreme Court's language in *Atlantic Marine*. (ECF No. 8 at 8.) "[W]hen a plaintiff agrees by contract to bring suit only in a specified forum—*presumably in exchange for other binding promises by the defendant*—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." (*Id.* (emphasis in original) (quoting *Atl. Marine*, 571 U.S. at 63).) According to AB Data, it *didn't* agree to the forum-selection clause in exchange for other binding promises, precisely because it was unaware that Ricoh was misrepresenting the capabilities of its software. If it had been aware of Ricoh's alleged fraudulent misrepresentations, AB Data contends it would have "approached the negotiations over the contract far differently and insisted on the right to obtain convenient relief in local courts." (*Id.* at 11.) Thus, according to AB Data, the forum-selection clause *was* procured by fraud because AB Data would have negotiated differently if it was aware of Ricoh's alleged misrepresentations. This argument fails as a matter of law. Even if AB Data would have negotiated different terms had it known that its contractual relationship with Ricoh would end in litigation, that is not sufficient to establish that the forum-selection clause itself was procured by fraud. AB Data has not alleged that Ricoh made any fraudulent statements related to the forum-selection clause, and that is the standard. *See Muzumdar* 438 F.3d at 762; *see also Am. Patriot Ins. Agency, Inc. v. Mut. Risk. Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) ("[A] dispute over a contract does not cease to be such merely because instead of charging breach of contract the

plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance.") Moreover, by its own admission, "AB Data is a company routinely involved in and familiar with the costs and risks of litigation." (ECF No. 8 at 10.) It was therefore responsible for reading and understanding the provisions in the License Agreement that it signed. Neither American nor Canadian law allows AB Data to avoid an unfavorable forum-selection clause based on its own professed failure to negotiate a different one simply by alleging fraud in the inducement of the contract as a whole. Accordingly, the Court finds that the forum-selection clause is mandatory and enforceable against all of AB Data's claims.

### B. Application of the Doctrine of *Forum Non Conveniens* is Warranted.

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine*, 571 U.S. at 60. While the decision to enforce a valid forum-selection clause is within the discretion of the Court, it should do so "in all but the most exceptional cases." *Id.* at 63 (quoting *Stewart Org.*, 487 U.S. at 31). Because the forum-selection clause is mandatory, AB Data's choice of forum holds no weight and it "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *See Nulogy*, 76 F.4th at 680 (emphasis removed) (quoting *Atl. Marine*, 571 U.S. at 63). And the Court "may consider arguments about public-interest factors only." *Atl. Marine*, 571 U.S. at 64.

The only public-interest argument AB Data makes is that its statutory fraud claim under Wis. Stat. §§ 895.446, 943.20 should be heard in a Wisconsin court because "Wisconsin has legislatively codified its strong public policy of protecting individuals and business from scams." (ECF No. 8 at 13.) According to AB Data, dismissing its statutory fraud claim would "allow similar bad actors to escape liability under similar circumstance; and embolden them." (*Id.* at 14.) But it doesn't explain how dismissal in this Court would allow Ricoh, or any other "bad actor" to escape liability. Canadian courts can and often do apply Wisconsin law. *A1 Pressure Sensitive Prods. Inc. v. Bostik Inc.*, 2009 CarswellOnt 1190, para. 4 (Can. Ont. C.A.) (WL). And AB Data does not argue that it would be unable to bring its statutory fraud claim in an Ontario court. Nor does it argue that this Court, which is already a federal forum and not a Wisconsin state court, would be better suited to adjudicate its claim.

While AB Data is correct that, under Federal law, a "choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit

is brought, whether declared by statute or by judicial decision," *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), it fails to provide any support for its contention that the mere existence of a statute prohibiting certain behavior frees any claim under that statute from an otherwise controlling forum-selection clause. Instead, AB Data directs the Court to several Wisconsin cases pertaining to choice-of-law provisions. (ECF No. 8 at 13.) But a choice-of-law provision is not the same as a forum-selection clause. And a party that defies a mandatory forum-selection clause is not entitled to choice-of-law rules in the venue in which it brings suit. *Atl. Marine*, 571 U.S. at 65–66. Simply put, AB Data has not carried its burden of establishing that this is an exceptional case where application of the forum-selection clause that it agreed to is unwarranted, as to any of its claims.

AB Data also directs the Court to Canada's "strong cause" test and argues that Canadian law militates against enforcing the forum-selection clause. But while Canadian law may rightfully govern interpretation of the validity and reach of the forum-selection clause, enforcement of the clause through the doctrine of *forum non conveniens* is a procedural issue that the Court considers under federal United States law. *See Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 746 (7th Cir. 2008) ("The procedure in diversity suits is governed by federal law."). And even if Canadian law were to control, the clause would still be enforced under the strong cause test. Canadian courts apply the test restrictively in the commercial context. "In commercial interactions, it will usually be desirable for parties to determine at the outset of a business relationship where disputes will be settled. Sophisticated parties are justifiably 'deemed to have informed themselves about the risks of foreign legal systems and are deemed to have accepted those risks in agreeing to a forum selection clause.'" *Pesorama Inc. v. Borden Ladner Gervais LLP*, 2023 CarswellOnt 10314, para. 25 (quoting *Douez*, [2017] 1 S.C.R 751 at para. 31). AB Data is just such a sophisticated party that chose to accept the risks of agreeing to a forum-selection clause.

Because AB data has not shown that enforcement of the forum-selection clause is unwarranted, as to any or all of its claims, the Court will enforce the clause and dismiss the complaint under the doctrine of *forum non conveniens*.

## II. AB Data's Motion to Amend Its Complaint Will Be Denied as Futile

Federal Rule of Civil Procedure 15 guarantees each party the right to amend its pleadings once as a matter of course, within 21 days of serving the pleading or being served with a responsive

pleading. Fed. R. Civ. P. 15(a)(1)(A)–(B). Further amendments require either written consent from the opposing party or the court's leave. Fed. R. Civ. P. 15(a)(2). The Court should give leave freely "when justice so requires." *Id.*; *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). But leave is not required "where the amendment would be futile." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (citing *Foman v. Davis*, 371 U.S. 178, 183 (1962)).

AB Data seeks to amend its complaint to add Avanti as a party and allege additional facts about the relationship between Avanti and Ricoh. It also seeks to clarify that its claim for unjust enrichment would only apply if the Court rescinds its contract with Ricoh. But, as explained above, the forum-selection clause applies to each of AB Data's claims regardless of whether they are brought against Ricoh, Avanti, or both. Nothing in AB Data's proposed amended complaint would alter the Court's *forum non conveniens* analysis. The motion to amend is, therefore, futile and will be denied.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, ECF No. 4, **GRANTED**, and the case is **DISMISSED** for *forum non conveniens*. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend the Complaint, ECF No. 14, is **DENIED** as futile.

Dated at Milwaukee, Wisconsin on January 30, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge